UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT



| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No.: 3:20CR 14 |
| | VIOLATIONS: |
| v. | |
| THOMAS F. LANGAN | 15 U.S.C. § 1 (Conspiracy to Restrain Trade) |
| | 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud) |

INFORMATION

The United States of America, acting through its attorneys, charges:

General Allegations

At all times relevant to this Information:

1. "CC-1" was a limited liability company organized and existing under the laws of Connecticut with an office in North Haven, Connecticut. CC-1 provided insulation services in Connecticut.

2. Defendant THOMAS F. LANGAN ("LANGAN") was an individual who was a 49% co-owner of CC-1 and was responsible for bidding on insulation contracts on behalf of CC-1.

3. "CC-2" was a corporation organized and existing under the laws of New York with offices in Oxford, Connecticut; Congers, New York; Tonawanda, New York; and Clifton Park, New York. CC-2 provided insulation services in Connecticut, New York, and elsewhere.

4.      Michael S. Flynn ("Flynn"), a co-conspirator charged elsewhere, was an individual who was a 50% owner of CC-2 and was responsible for bidding on insulation contracts on behalf of CC-2.

5.      Gary DeVoe ("DeVoe"), a co-conspirator charged elsewhere, was CC-2's Senior Branch Manager for the New England Division and was responsible for bidding on insulation contracts on behalf of CC-2.

6.      "CC-3" was a limited liability company organized and existing under the laws of Delaware with offices in Foxborough, Massachusetts and Branford, Connecticut. CC-3 provided insulation services in Massachusetts, Connecticut, New York, and elsewhere.

7.      Paul M. Camara, Jr. ("Camara"), a co-conspirator charged elsewhere, was an individual who was President and co-owner of CC-3, and was responsible for bidding on insulation contracts on behalf of CC-3.

8.      "CC-4" was a limited liability company organized and existing under the laws of Connecticut. CC-4 provided insulation services in Massachusetts, Connecticut, New York, and elsewhere. Camara was an employee of CC-4 before leaving to form CC-3.

9.      Various corporations and individuals, not named as defendants herein, participated as co-conspirators in the offenses charged herein and performed acts and made statements in furtherance thereof.

10.     Whenever in this Information reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

11. General contractors, on behalf of entities, such as universities, hospitals, and other public and private entities, generally solicit competitive bids from and enter into contracts with mechanical contractors which provide, among other things, plumbing and / or HVAC (heating, ventilation, and air conditioning) services on renovation or new construction projects. In turn, mechanical contractors solicit competitive bids from, and enter into subcontracts with, insulation contractors to perform the insulation portion of the work on those plumbing and / or HVAC projects. Alternatively, depending on the size of the project, the entities may solicit bids from and enter into contracts directly with the insulation contractors, or may solicit bids from and enter into contracts with mechanical contractors which will, in turn, solicit bids from and enter into contracts with insulation contractors.

12. The confidentiality and independence of the bids are essential to maintaining integrity and fairness during the bidding process, and in ensuring that customers receive the best value. In some cases, bidders are required to certify that they have not engaged in anticompetitive conduct (i.e., by signing certificates of non-collusion or independent pricing).

## COUNT ONE (Conspiracy to Restrain Trade)
(15 U.S.C. §1)

13. The allegations in paragraphs 1 through 12 of this Information are realleged and incorporated by reference as though set out in this Count.

### Description of the Offense

14. Beginning at least as early as October 2011 and continuing until as late as March 2018, the exact dates being unknown to the United States, in the District of Connecticut and elsewhere, defendant LANGAN, his co-conspirators (Flynn, DeVoe, Camara, and CC-1 through CC-4), and others, known and unknown to the United States, entered into and engaged in a

combination and conspiracy to suppress and eliminate competition by allocating customers, rigging bids, and fixing prices for insulation contracts that was a *per se* unlawful, and thus unreasonable, restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act (Title 15, United States Code, Section 1).

15. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and his co-conspirators, the substantial terms of which were to allocate customers, rig bids, and fix prices for insulation contracts.

### Manner and Means of the Conspiracy

16. For the purpose of forming and carrying out the charged combination and conspiracy, defendant LANGAN, his co-conspirators (Flynn, DeVoe, Camara, and CC-1 through CC-4), and others, known and unknown to the United States, did those things that they combined and conspired to do, including, among other things:

   a. Participated in meetings and engaged in communications with co-conspirators to discuss prices and bids for insulation contracts;

   b. Participated in meetings and engaged in communications with co-conspirators to allocate contracts, fix prices, and rig bids for insulation contracts;

   c. Agreed during meetings and communications to rig bids, allocate contracts, and to fix, increase, maintain, and stabilize prices for insulation contracts;

   d. Agreed during meetings and communications which insulation contractor would be the winning bidder and the bid prices that would be submitted by the co-conspirators;

   e. Agreed during meetings and communications to submit one or more inflated bids to create the false appearance of competition for these insulation contracts;

f. Shared proposals, estimates, and other bid information with and among each other using a messaging application, email, phone calls, text messages, faxes, and other electronic means;

g. Concealed the charged combination and conspiracy by communicating through a disappearing messaging application and using cellular phones for which the registration masked the identity of the users, among other means;

h. Submitted collusive and noncompetitive bids in accordance with the agreement reached;

i. Provided insulation services pursuant to contracts awarded at collusive and noncompetitive prices; and

j. Accepted payment for insulation services at collusive and noncompetitive prices.

## Trade and Commerce

17. During the period covered by this Count, the business activities of the defendant and his co-conspirators that are the subject of this Count were within the flow of, and substantially affected, interstate trade and commerce. For example, substantial quantities of equipment and supplies necessary to provide such insulation services, as well as payments for such insulation services provided by CC-1 and its co-conspirators, equipment, and supplies, traveled in interstate trade and commerce.

All in violation of Title 15, United States Code, Section 1.

## COUNT TWO (Conspiracy to Commit Wire Fraud)
(18 U.S.C. § 1349)

18. The allegations in paragraphs 1 through 12 and 16 of this Information are realleged and incorporated by reference as though set out in this Count.

19. Beginning at least as early as October 2011 and continuing until as late as March 2018, the exact dates being unknown to the United States, in the District of Connecticut and elsewhere, defendant LANGAN, his co-conspirators (Flynn, DeVoe, Camara, and CC-1 through CC-4), and others, known and unknown to the United States, did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree together and with others, known and unknown to the United States, to commit an offense against the United States, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343, that is, to devise and to intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice, to knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds.

20. It was part of the conspiracy that defendant LANGAN, Flynn, DeVoe, Camara, CC-1 through CC-4, and others sent, and caused to be sent, between and among each other, their company's bid prices using texts, emails and / or faxes to and from Connecticut to and from states outside of Connecticut, including Massachusetts and elsewhere, the purpose of which was to effectuate a scheme to defraud by (a) agreeing and coordinating between and among each other who the winning and losing bidders would be on the contracts that were up for bid and (b) agreeing and arranging for the losing bidders to submit inflated bids to create the false

appearance of competition for these insulation contracts when in fact they were providing collusive, non-competitive bid prices.

21.     It was further part of the conspiracy that defendant LANGAN, Flynn, DeVoe, Camara, CC-1 through CC-4, and others known and unknown to the United States, sent, and caused to be sent, bids to mechanical contractors via emails and faxes to and from Connecticut to and from states outside of Connecticut, including Massachusetts and elsewhere, that were a result of the agreement between and among the co-conspirators to provide collusive, non-competitive bid prices on insulation contracts.

22. It was further part of the conspiracy that defendant LANGAN knowingly caused third parties, including mechanical contractors, to submit bids, via emails and faxes from Connecticut to states outside of Connecticut, that he knew to be false in that the bids contained materially false certificates of non-collusion or independent pricing.

All in violation of Title 18, United States Code, Section 1349.

UNITED STATES OF AMERICA

_____
MAKAN DELRAHIM
Assistant Attorney General

_____
BERNARD A. NIGRO, JR.
Principal Deputy Assistant Attorney General

_____
RICHARD POWERS
Deputy Assistant Attorney General

_____
MARVIN N. PRICE, JR.
Director of Criminal Enforcement

_____
JOSEPH MUOIO
Acting Chief, New York Office

_____
HELEN CHRISTODOULOU
MILOSZ GUDZOWSKI
Attorneys, New York Office
Antitrust Division
U.S. Department of Justice

_____
JOHN H. DURHAM
United States Attorney for the
District of Connecticut

_____
DAVID T. HUANG
Assistant U.S. Attorney
District of Connecticut